IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

NADINE NOORHASAN, PH.D. )
)
          Plaintiff, )
) CIV. CASE NO.: 11-cv-21
        v. )
)
GOVERNOR JOHN P. DE JONGH, JR. )
In his official capacity )
)
          Defendant. )
                                         )

**ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

THIS MATTER is before the Court on Plaintiff Nadine Noorhasan's ("Plaintiff") Motion for a Temporary Restraining Order. Plaintiff seeks a temporary restraining order and preliminary injunction against Governor John de Jongh ("Governor") reinstating her employment as Director of Division of Environmental Protection. For the reasons discussed below, the Court denies her motion for a temporary restraining order.

**I.    Background**[1]

On March 12, 2007, Plaintiff was hired by the Governor as the Director of Environmental Protection with the Department of Planning and Natural Resources on St. Croix, United States

---

[1] The following facts are taken from documents submitted in support of Plaintiff's Motion For a Temporary Restraining Order, Reinstatement and Preliminary Injunction. (Doc. 3.) These factual findings are for the purpose of this order only.

Virgin Islands. (Affidavit of Nadine Noorhasan ¶ 3, Doc. 3-1.) On November 29, 2010, Commissioner Robert Mathes[2] sent her an email stating:

> In keeping with the tradition, after re-election of a sitting Governor, all *exempt* employees involved in policy and confidential capacities are asked to submit letters of resignation to the Governor for his review and ultimate decision to accept or reject. The letter should be brief, written on Government stationary and should not include an effective date for your resignation.

(November 29, 2010 Email, Doc. 3-3) (emphasis added).

On December 1, 2010, Plaintiff submitted a resignation letter to the Governor. The letter did not state an effective date and indicated that she wished to continue her job. (December 1, 2010 Letter, Doc. 3-4.) On December 16, 2010, Plaintiff sent the Governor an email stating that her December 1, 2010 resignation letter was involuntary, that she had not yet received an acceptance of that resignation, and that she was therefore rescinding her resignation. (December 15, 2010 Letter, Doc. 3-5; December 16, 2010 Email, Doc. 3-6; Noorhasan Aff. ¶ 10.) On December 16, 2010, the Governor responded to Plaintiff's email asking for a number where she could be reached. (December 16, 2010 Email; Noorhasan Aff. ¶ 11.) Plaintiff met with the Governor on December 22, 2010 and explained why she had rescinded her resignation and that she could not afford to lose her benefits. (Noorhasan Aff. ¶ 15.)

Plaintiff went on sick leave on December 19, 2010 and returned on January 10, 2011.[3] (Noorhasan Aff. ¶¶ 14-16.) On January 14, 2011, on the advice of her doctor, she took sick leave until February 28, 2011. (Id. ¶ 17.) On January 20, 2011, she received a letter from the

---

[2] At the time, Mathes was the Commissioner of the Department of Planning and Natural Resources.

[3] An email from Plaintiff to Commissioner Mathes indicates that her sick leave was due, in part, to the stress she suffered from the rescission of her resignation and the resulting negative feedback from her staff. (December 19, 2010 Email, Doc. 3-7.)

2

Governor thanking her for her service and advising that he had accepted her resignation, effective immediately. (*See* January 19, 2011 Letter, Doc. 3-8.)

## II. Analysis

Plaintiff brings several causes of action against the Governor. The gist of her complaint, however, is that she was deprived of her Fourteenth Amendment due process rights when she was terminated from her job without notice or a hearing. (*See* Complaint ¶¶ 22-30, Doc. 1.) She now seeks a temporary restraining order ("TRO") and preliminary injunction reinstating her as Director of the Division of Environmental Protection.

Injunctive relief is an "extraordinary remedy and should be granted only in limited circumstances." *Kos Pharms. Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994) (internal quotations omitted)). "The function of the temporary restraining order is to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." *Tootsie Roll Industries, Inc. v. Sathers, Inc.*, 666 F.Supp. 655, 658 (D. Del.1987). "The standards for a temporary restraining order are the same as those for a preliminary injunction." *Bieros v. Nicola,* 857 F.Supp. 445, 446 (E.D. Pa. 1994). Thus, Plaintiff must show that she is likely to succeed on the merits, will suffer irreparable harm without an injunction, the harm caused to nonmoving party does not outweigh the benefits of injunctive relief, and that the injunction is in the public interest. *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 356 (3d Cir. 2007); *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000).

Several facts counsel against granting a TRO in these circumstances. First, the Court cannot say that Plaintiff is likely to succeed on the merits of her claim because there are several

key factual issues that cannot be resolved on this undeveloped record. *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F.Supp.2d 853, 863 (S.D. Ohio 2008) (denying motion for TRO because of "a question of fact that the Court cannot resolve at this time."); *Blue Planet Software, Inc. v. Games Intern., LLC*, 334 F.Supp.2d 425, 439 (S.D.N.Y. 2004) (same). For example, Plaintiff's due process claim depends on whether she was a "regular" or "exempt" employee. *See Iles v. de Jongh,* 2009 WL 4349475, at *2 (D.V.I. 2009) (noting that "regular" government employees cannot be fired without cause and have a property right in continued employment while "exempt" employees have no property right) (citing *Richardson v. Felix*, 856 F.2d 505, 509 (3d Cir. 1988) and 3 V.I.C. § 451a).[4] Plaintiff's submission to the Court shows that there is a clear disagreement over whether her position is "regular" or "exempt." The email from Commissioner Mathes contemplates that her position was "exempt," while her affidavit claims that her position is not exempt. (*See* November 29, 2010 Email; Noorhasan Aff. ¶¶ 4-5.) There is no other evidence on this issue before the Court and Plaintiff's own say-so is a rather flimsy basis upon which to grant her the extraordinary relief she seeks. *Kendall Holdings, Ltd.*, 630 F.Supp.2d at 863 (in denying TRO, finding that plaintiff's affidavit was an insufficient basis to resolve key factual question); *see also Iles*, 2009 WL 4349475, at *2 (finding that plaintiffs were "regular" employees and granting preliminary injunction reinstating their employment only after an evidentiary hearing when all parties had an opportunity to be heard).

Furthermore, and unlike in *Iles*, Plaintiff was not simply terminated. *Iles,* 2009 WL 4349475, at *2. Plaintiff tendered a resignation letter that she later attempted to rescind. If her

---

[4] Section 451a(b)(1)-(7) lists several "exempt" positions including department heads, Assistant Commissioners and Deputy Commissioners and members of boards, commissions or other bodies appointed by the Governor. Section 451a(b)(8) provides that an employee may be exempt when the "position requires a confidential relationship with a policy-making official when the position is so designated by the Governor and submitted to the Legislature."

employment ended by her own resignation, success on her due process claim becomes exceedingly more difficult. Crucial unresolved questions remain regarding her resignation letter including whether it was effective immediately and whether her conduct constitutes a rescission. These questions cannot be resolved without giving the Governor an opportunity to be heard and present evidence.

Second, Plaintiff has not complied with the procedural requirements necessary to obtain a TRO. Federal Rule of Civil Procedure 65(b) governs temporary restraining orders and allows the Court to issue one without notice to the nonmoving party only if the moving party provides "(1) specific facts . . . show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

Here, Plaintiff has not met either requirements of Rule 65(b)(1). First, she has not demonstrated that the harm she will suffer is sufficiently "immediate" to justify the granting of a temporary restraining order without giving the Governor an opportunity to respond. Plaintiff alleges that she was unlawfully terminated on January 19, 2011 yet did not file her complaint until March 14, 2011, nearly two months later. (*See* Complaint, Doc. 1.) The fact that Plaintiff waited two months after her employment terminated counsels against granting her relief without at least giving the Governor a chance to respond. *Shaffer v. Globe Protection, Inc.*, 721 F.2d 1121, 1123 (7th Cir. 1983) ("immediate harm" not present where plaintiff waited two months before seeking injunctive relief); *Stokley-Van Camp Inc. v. Coca-Cola*, 2 U.S.P.Q. 2d 1225, 1227 (N.D. Ill. 1987) (finding no "immediate harm" where plaintiff delayed three months). Furthermore, she is not seeking to maintain the status quo through her TRO request, but to regain

5

her employment. *Hoeber v. Local 30*, 939 F.2d 118, 127 (3d Cir. 1991) (finding that where the status quo is unaffected, a temporary injunction is not called for); *Winward v. Hill,* 1992 WL 184313, at *1 (E.D. Pa. 1992) (denying TRO because "Plaintiff is not seeking to have the status quo maintained but instead is asking the court to alter the status quo on an emergency basis.").

Finally, Plaintiff's attorney has not certified in writing what efforts have been made to give notice of the motion for a TRO to the Governor and why notice should not be required. *See Phillips v. Charles Schreiner Bank*, 894 F.2d 127, 131 (5th Cir. 1990) ("[T]he Supreme Court has indicated that this notice requirement is more than a mere procedural formality; instead, rule 65(b)'s stringent restrictions 'on the availability of *ex parte* temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute.'" (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974))); *Gebhardt European Autos, LLC v. Porsche Cars of North America, Inc*., 2010 WL 4642490, at *3 (D. Colo. Nov. 9, 2010) (denying motion for TRO for failing to comply with notice provisions of Fed. R. Civ. P. 65(b)(1)(B)); *Ferguson v. Aurora Loan Services*, 2010 WL 4286194, at *1 (S.D. Ga. Oct. 22, 2010) (same).

### III.    Conclusion

For the foregoing reasons, the Court denies Plaintiff's Motion for a Temporary Restraining Order.[5]

Accordingly, it is hereby

**ORDERED** that Plaintiff's Motion for a Temporary Restraining Order is **DENIED**.

ENTERED: March 21, 2011                            _____/s/_____
                                                                              RAYMOND L. FINCH
                                                                              SENIOR U.S. DISTRICT JUDGE

---

[5] The Court does not reach Plaintiff's Motion for a Preliminary Injunction.  This order is without prejudice to that motion which can only be resolved after the Governor has had an opportunity to respond.  *See* Fed. R. Civ. P. 65(a)(1).

7