DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

_____
                                                            )
**NADINE NOORHASAN, PH.D.,**            )
                                                            )
       *Plaintiff,*                                  )
                                                            )
       v.                                                  )   Case No. 11-cv-0021
                                                            )
**GOVERNOR JOHN P. de JONGH, JR.,**  )
**in his official capacity,**                      )
                                                            )
       *Defendant.*                              )
_____)

**Attorneys:**
**Jeffrey B.C. Moorhead, Esq.,**
St. Croix, U.S.V.I.
    *For the Plaintiff*

**Melvin H. Evans, Jr., Esq.,**
St. Croix, U.S.V.I.
    *For the Defendant*

## MEMORANDUM OPINION

**Lewis, District Judge**

    THIS MATTER comes before the Court on the Motion by Nadine Noorhasan ("Plaintiff"), filed on March 14, 2011, for a Temporary Restraining Order, Reinstatement and Preliminary Injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure. (Dkt. No. 2). In an Order entered on March 21, 2011, this Court denied that portion of Plaintiff's motion that sought a Temporary Restraining Order. *Noorhasan v. de Jongh*, 2011 WL 1033704 (D.V.I.

Mar. 21, 2011); (Dkt. No. 4).  For the reasons that follow, the Court denies Plaintiff's motion for a preliminary injunction.[1]

## I. BACKGROUND[2]

Plaintiff, who has a Ph.D. in analytical chemistry with an environmental chemistry background, was hired as Director of Environmental Protection in the U.S. Virgin Islands Department of Planning and Natural Resources (the "Department") on March 12, 2007.  (Dkt. No. 3-1, ¶¶ 2, 3; Dkt. No. 3-2).  On November 29, 2010, the Commissioner of the Department, Robert Mathes, sent Plaintiff and other Department members an e-mail which stated:

> In keeping with tradition, after the re-election of a sitting Governor, all exempt employees involved in policy and confidential capacities are asked to submit letters of resignation to the Governor for his review and ultimate decision to accept or reject.  The letter should be brief, written on Government stationery and should not include an effective date for your resignation.  Please address the letter to the Governor with a copy to me and your personnel file.  Submit the letter to Ja'Nel and she will coordinate with Ms. Jackson-Williams in getting the documents to Government House by Thursday, 2 December 2010.  Please be prompt and any questions let me know.

(Dkt. No. 3-3).

On December 1, 2010, Plaintiff submitted her letter of resignation to Governor John P. de Jongh, Jr., in accordance with the post-election tradition mentioned by Mathes.  In her letter, she indicated that she would like the opportunity to continue to work for the Department.  (Dkt. No. 3-4).  On December 16, 2010, Plaintiff submitted a letter (dated December 15, 2010) to the Governor via e-mail in which she asserted that her December 1st letter "was not a voluntary

---

[1] In *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172 (3d Cir. 1990), the Third Circuit stated that "a district court is not obliged to hold a hearing [on a preliminary injunction motion] when the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm."  *Id.* at 1176.

[2] The following facts are taken from Plaintiff's Complaint, (Dkt. No. 1), and documents submitted in support of Plaintiff's Motion for a Temporary Restraining Order, Reinstatement and Preliminary Injunction, (Dkt. No. 3).  These factual findings are for purposes of this Memorandum Opinion only.

resignation"; that she had not received an acceptance of her involuntary resignation letter and was therefore rescinding that letter; and that she had worked hard in her position and hoped to continue working in that capacity. (Dkt. No. 3-5). The Governor responded to Plaintiff's e-mail on December 16th, asking for a telephone number where he could reach her. (Dkt. No. 3-6). On December 19, 2010, Plaintiff sent an e-mail to Mathes explaining that she had rescinded her resignation because, "in this way, I can still be entitled to my unemployment benefits if I am terminated." (Dkt. No. 3-7). She also discussed the stress that she had been experiencing at work and her intent to visit her doctor "to get sick leave." Plaintiff requested permission to work from home that week, which Mathes granted on condition that she answer his telephone calls and attend an important meeting. (Dkt. No. 3-7).

On December 22, 2010, Plaintiff met with the Governor. She explained why she had rescinded her letter of resignation and why she could not afford to lose her job-related benefits. (Dkt. No. 3-1 at ¶ 15).

On January 10, 2011, Plaintiff returned to the office but worked less than one week due to her "serious health issues." She was advised by her doctor on January 14, 2011, to take time off from work until February 28, 2011. She requested and was granted sick leave from then-Acting Commissioner Carmelo Rivera. (Dkt. No. 3-1 at ¶¶ 16, 17; Dkt. No. 3-9). On January 20th, while still on sick leave, Plaintiff received a letter from the Governor dated January 19, 2011, in which he acknowledged her December 1, 2010 letter of resignation; thanked her for her service to the Department; and advised her that he had decided to accept her resignation, effective immediately. (Dkt. No. 3-8). Plaintiff has been unemployed since January 20, 2011. (Dkt. No. 3-1 at ¶ 25).

3

On March 14, 2011, Plaintiff filed a Complaint in which she brought several causes of action against the Governor in his official capacity. (Dkt. No. 1). The essence of the Complaint is that she was "deprived of her Fourteenth Amendment due process rights when she was terminated from her job without notice or a hearing." *Noorhasan*, 2011 WL 1033704 at *1. On the same day, she filed an *ex parte* Motion for Temporary Restraining Order, Preliminary Injunction, and Motion for Reinstatement. (Dkt. No. 2, 3). The Motion for Preliminary Injunction and Reinstatement are currently before the Court. The Governor answered the Complaint in July 2011, but did not respond to Plaintiff's motion.

## II. DISCUSSION

### A. Standard of Review

The Third Circuit has articulated the standard for granting a preliminary injunction pursuant to Fed. R. Civ. P. 65 as follows:

> To determine whether to grant a preliminary injunction, 'a district court must consider: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.'

*Iles v. de Jongh*, 638 F.3d 169, 172 (3d Cir. 2011) (quoting *McTernan v. City of New York*, 577 F.3d 521, 526 (3d Cir. 2009)). Injunctive relief is "'an extraordinary remedy' and 'should be granted only in limited circumstances.'" *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)). "The purpose of a preliminary injunction is to preserve the status quo, not to decide the issues on their merits." *Anderson v. Davila*, 125 F.3d 148, 156 (3d Cir. 1997).

**B. Motion for Preliminary Injunction**

As noted above, Plaintiff alleges that she was deprived of her Fourteenth Amendment procedural due process rights when she was terminated from her job without notice or a hearing, in violation of 42 U.S.C. §§ 1981 and 1983.  She also contends that she was terminated in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654.  Plaintiff seeks a preliminary injunction "prohibiting the Defendant[] from continuing to enforce Plaintiff's termination of employment with the Government of the Virgin Islands."  (Dkt. No. 2 at 1).  In essence, if the preliminary injunction is granted and the Governor is prohibited from continuing to enforce Plaintiff's termination, Plaintiff will be reinstated.  Consequently, the Court does not consider Plaintiff's motion for reinstatement as Director of the Division of Environmental Protection as a separate motion from the motion for preliminary injunction.  Rather, the Court considers reinstatement as the *relief* Plaintiff would receive if her motion for a preliminary injunction is granted.

**1. Likelihood of Success on the Merits**

To establish a procedural due process claim, "a plaintiff must demonstrate that '(1) [s]he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to [her] did not provide due process of law.'"  *Iles*, 638 F.3d at 173 (citation omitted).  Thus, to demonstrate a likelihood of success on the merits of her claim, Plaintiff must establish a reasonable likelihood that she had a property interest in her job, such that Defendant's failure to provide notice and a hearing prior to her termination violated her due process rights under 42 U.S.C. § 1983.  "'The question of whether an employee has a property right in continued employment is a question of state [or territorial] law.'"  *Id.* (citation omitted).

In *Iles*, the Third Circuit reviewed the Virgin Islands statutes concerning which category of public employees could be terminated only for cause, thus granting them a property interest in their continued employment. The two broadest categories of public employment are career service and exempt service employees: "an employee is in the career service unless the employee holds an exempt position described in 3 V.I.C. § 451a(b)(1)-(8)." *Id.* At issue in this case (as it was in *Iles*) is subsection (8) of § 451a(b). "[A] position is exempt and not in the career service category when the Governor designates it as a position of a 'policy-determining nature' and it is submitted to the Legislature. The exempt designation is significant because employees in that category can be terminated without cause." *Id.* (quoting 3 V.I.C. § 451a(b)(8)). Such employees have no property interest in their jobs.

Not all career service employees have a property interest in their jobs. The career service category is

> further divided by § 451 into two subcategories: employees who are 'regular' and those who are 'not regular.' . . . [A] 'regular' employee is one 'who has been appointed to a position in the [career] service in accordance with this chapter [relating to the Personnel Merit System] after completing his working test period.'

*Id.* at 173-74 (quoting *Richardson v. Felix*, 856 F.2d 505, 509 (3d Cir. 1988)). In *Richardson*, the Third Circuit held that the termination of regular employees must be for cause, thus granting them "a property interest in continued employment." *Richardson*, 856 F.2d at 509. As the *Iles* Court concluded, "not all 'career service' employees have due process protection, but rather, only those who also meet the definition of 'regular' employees." *Iles*, 638 F.3d at 174.

In this case, the information provided by Plaintiff concerning her employment category was contradictory. In her Affidavit, she averred that her position "was *never* designated by Governor DeJongh as a position of a policy determining nature or submitted to the legislature." (Dkt. No. 3-1 at ¶ 5). In other words, Plaintiff claims that she was a career (non-exempt)

6

employee.[3]  However, the e-mail from then-Commissioner Mathes, that requested her resignation and that of other employees, stated: "In keeping with tradition, after the re-election of a sitting Governor, all *exempt employees involved in policy and confidential capacities* are asked to submit letters of resignation to the Governor for his review and ultimate decision to accept or reject." (Dkt. No. 3-3) (emphasis added). Thus, the e-mail suggests that the Commissioner viewed Plaintiff's job category as that of an exempt employee, which would allow her to be terminated without cause.

The Third Circuit has affirmed a preliminary injunction because the district court did not rely on any disputed facts. *See Williams v. Curtiss-Wright Corp.*, 681 F.2d 161, 163 (3d Cir. 1982); *see also Traister v. Velez*, 2011 WL 4860036, at *2 (D.N.J. Oct. 13, 2011) ("Furthermore, a preliminary injunction may not be issued where there are disputed issues of fact."). This position is consistent with rulings by other circuits that have denied motions for preliminary injunctions in cases that have been beset with disputed factual issues. *See Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964) (observing that, "on application for preliminary injunction[,] the court is not bound to decide doubtful and difficult questions of law or disputed questions of fact."); *Gen. Elec. Co. v. Am. Wholesale Co.*, 235 F.2d 606, 608 (7th Cir. 1956) ("An injunction pendente lite should not issue where the parties are in serious dispute on conflicting question[s] of fact."); *see, e.g., Video Trip Corp. v. Lightning Video, Inc.*, 866 F.2d 50, 52 (2d Cir. 1989) (opining that presence of serious factual disputes "prevents a finding of probability of success" and affirming denial of preliminary injunction).

---

[3] In *Iles*, the Court pointed out that "merely because a Virgin Islands public employee is part of the 'career service' does not necessarily mean that [s]he is also a 'regular' employee with a property interest entitled to due process protection." *Iles*, 638 F.3d at 175.

The Court cannot conclude that Plaintiff is likely to succeed on the merits of her claim based on the existing record because the key fact underlying that determination—whether Plaintiff had a property interest in her job—cannot be ascertained from the contradictory information she has placed before the Court. Accordingly, the first prong of the standard that must be met for injunctive relief has not been satisfied.

### 2. Irreparable Harm

In order to secure a preliminary injunction, Plaintiff must demonstrate that she will suffer irreparable harm—that is, that she will suffer harm if her termination is permitted to continue, for which there is no adequate remedy at law. *See Acierno v. New Castle Cnty.*, 40 F.3d 645, 655 (3d Cir. 1994). The Third Circuit has emphasized that, in order to show irreparable harm, "the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the *only* way of protecting the plaintiff from harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (emphasis added)). The irreparable harm element requires a "'clear showing of immediate irreparable injury.'" *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir. 1989) (citation omitted).[4] Plaintiff bears "the burden of showing an imminent threat of irreparable injury to herself." *Marxe v. Jackson*, 833 F.2d 1121, 1125 (3d Cir. 1987).

Plaintiff makes a four-pronged argument that she has suffered irreparable injury. First, she asserts that she has been deprived of her Constitutional property rights in her job, which

---

[4] In the Order denying a Temporary Restraining Order, the Court observed that Plaintiff waited almost two months from the day she was terminated to file her Complaint, and cited cases holding that "immediate harm" was not present where plaintiffs waited two or three months before seeking injunctive relief. *Noorhasan*, 2011 WL 1033704, at *3. The same observation is pertinent here.

constitutes irreparable harm "in and of itself." Second, she claims that she has suffered irreparable economic damages. Third, she posits that she "will suffer non-economic damages that are not fully compensable through a monetary award," such as a loss of job satisfaction, reputation, and professional growth and development. Fourth, she contends that because her termination "completely disregarded the Family [and Medical] Leave Act and all normal channels," she suffered irreparable injury. (Dkt. No. 3 at 7, 8). None of these arguments constitute irreparable harm.

### a. Constitutional Violations and Irreparable Harm

In her Memorandum, Plaintiff provides case law supporting the proposition that deprivation of constitutional freedoms, even for a short time, constitutes irreparable harm justifying injunctive relief. That case law, for the most part, concerns alleged First Amendment violations. *See, e.g., Elrod v. Burns*, 427 U.S. 347, 373 (1976). On the other hand, in *Hohe*, the Third Circuit observed that "the assertion of First Amendment rights does not automatically require a finding of irreparable injury, thus entitling a plaintiff to a preliminary injunction if he shows a likelihood of success on the merits," since a plaintiff must show "'a chilling effect on free expression.'" *Hohe*, 868 F.2d at 72-73 (citation omitted). The Court also posited that "[c]onstitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction." *Id.; see also Boretsky v. Corzine*, 2009 WL 1312701, at *6 (D.N.J. May 11, 2009) (commenting that the "Third Circuit has held that constitutional harm does not necessarily constitute irreparable harm."). In other words, a plaintiff must make some showing that the alleged constitutional violation has actually wrought some kind of injury; a statement to that effect is not enough.

Plaintiff's argument begins and ends with the conclusion that because her Fourteenth Amendment rights allegedly were violated, injunctive relief is justified. Not only is that not the law, but given the disputed facts in Plaintiff's moving papers concerning whether she actually had a property interest in her job, the Court has no basis to find, at this stage of the litigation, that Plaintiff has a likelihood of demonstrating that she suffered a constitutional injury—the predicate for her irreparable injury claim.[5] Thus, Plaintiff's constitutional claim is an insufficient basis upon which to support a finding of irreparable harm.

### b. Monetary Harms

Plaintiff claims that she has suffered and will suffer "loss of past and future income," including benefits and health insurance, and "other irreparable economic damages." (Dkt. No. 1, ¶¶ 25, 31).

"[T]he Third Circuit has consistently held that mere economic injury does not rise to the level requiring injunctive relief." *Singh v. Sch. Dist. of Phila.*, 2010 WL 3220336, at *6 (E.D. Pa. Aug. 11, 2010). "Irreparable injury is only established where money damages are difficult to ascertain or are clearly inadequate." *Naccarati v. Wilkins Twp., Pa.*, 846 F. Supp. 405, 409 (W.D. Pa. 1993). The Supreme Court has observed:

> We have held that an insufficiency of savings or difficulties in immediately obtaining other employment—external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself—will not support a finding of irreparable injury, however severely they may affect a particular individual.

---

[5] Moreover, in *Hohe*, the Third Circuit pointed out that "the standard remedy for violation of 42 U.S.C. § 1983 is compensatory damages. 'To the extent that Congress intended that awards under § 1983 should deter the deprivation of constitutional rights, there is no evidence that it meant to establish a deterrent more formidable than that inherent in the award of compensatory damages.'" *Hohe*, 868 F.2d at 73, n.6 (quoting *Carey v. Piphus*, 435 U.S. 247, 256 (1978)).

*Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974). In a similar vein, in *Holt v. Continental Group, Inc.*, 708 F.2d 87 (2d Cir. 1983), the Third Circuit opined that "the requisite irreparable harm is not established in employee discharge cases by financial distress or inability to find other employment, unless truly extraordinary circumstances are shown." *Id.* at 90-91.

Plaintiff has not alleged any facts showing the existence of "truly extraordinary circumstances." *Id.* Accordingly, her economic losses cannot support a finding of irreparable harm.

### c. Non-Monetary Harms

The Third Circuit has "recognized that 'the fact that the payment of monies is involved does not automatically preclude a finding of irreparable injury,'" emphasizing that "'the injury must be of a peculiar nature, so that compensation in money cannot atone for it.'" *Morton v. Beyer*, 822 F.2d 364, 372 (3d Cir. 1987) (citations omitted). Put another way, "[t]he irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages. This is not an easy burden." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484-85 (3d Cir. 2000) (citation omitted).

In that regard, Plaintiff argues that, in addition to "substantial and irreparable" financial harm, she will suffer a variety of non-economic harms—damage to her reputation, loss of job satisfaction, and loss of opportunities for professional growth and development—"for any period of time that she is unable to work as the Director of Environmental Protection[.]" (Dkt. No. 3 at 7). Thus, the question is whether the impact of the termination on her reputation and opportunities for professional development establish irreparable harm.

In *Morton*, the Third Circuit set a high bar for a plaintiff's reputational damage to constitute irreparable harm. Relying on *Fitzgerald v. Mountain Laurel Racing, Inc.*, 607 F.2d 589 (3d Cir. 1979), the plaintiff in *Morton* argued that he had suffered irreparable harm as a result of the alleged damage to his name and reputation as a corrections officer resulting from his suspension. In *Fitzgerald*, the Third Circuit had found "irreparable injury to the business and reputation of a licensed harness racing trainer and driver as a result of his eviction" from a racetrack; that ruling "was based on the nature of [the harness racing trainer's] profession" because, once racing licenses were issued, the continued possession of those licenses impacted the person's livelihood. *Morton,* 822 F.2d at 373 n.13.

In contrast, the Third Circuit in *Morton* did not equate the erosion of the "trust and confidence" that the plaintiff asserted had been so impaired that he could not obtain employment in his chosen profession with the circumstances of the *Fitzgerald* plaintiff because "the licensee in *Fitzgerald* was potentially *barred*, not merely impaired, from obtaining employment. . . . No such extreme deprivation is present here." *Id. Cf. Acierno*, 40 F.3d at 654 (also distinguishing *Fitzgerald* and rejecting plaintiff's argument that "any showing of potential harm to a plaintiff's reputation is sufficient to warrant a mandatory preliminary injunction that fundamentally changes the status quo").

The precedent in this Circuit, therefore, confirms that the Plaintiff's claimed reputational injury is insufficient to establish irreparable harm. Plaintiff has not alleged that the nature of her profession, or any licensing requirements, were at issue such that no adequate remedy at law would exist to compensate her for damage to her reputation as a result of her termination. Although the Court is not insensitive to the emotional distress suffered by employees who have been terminated, if the Court was to find irreparable harm simply because a plaintiff claimed

reputational loss as a consequence of an adverse employment action, this would eviscerate the requirement that a plaintiff show that extraordinary circumstances exist in order to establish non-economic irreparable harm. That is not the rule in this Circuit.

### d. Violation of FMLA

Plaintiff also asserts that because her termination "completely disregarded the Family [and Medical] Leave Act and all normal channels," she suffered irreparable injury. Her Complaint provides few facts concerning a possible FMLA violation: she simply asserts that she was terminated while she was on FMLA leave. Her motion in support of a preliminary injunction provides vestigial arguments that her termination disregarded the FMLA, without explaining how the statute was violated. This minimalist presentation does not suffice as grounds for the Court to find that Plaintiff has been irreparably harmed by such an alleged violation.

### III. CONCLUSION

In this case, the salient fact concerning whether Plaintiff has a property interest in her job has been put in question, by Plaintiff herself. That outstanding factual issue prompts the Court to conclude that Plaintiff cannot succeed on the merits of her underlying claim at this time. Neither has Plaintiff met her burden of showing irreparable harm.

A failure "to show a likelihood of success [on the merits] or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." *Arthur Treacher's Fish & Chips, Inc. v. A & B Mgmt. Corp. (In re Arthur Treacher's Franchisee Litig.)*, 689 F.2d 1137, 1143 (3d Cir. 1982). As a result, the Court need not address the last two factors in the preliminary injunction analysis. *Freedom Forge Corp.*, 204 F.3d at 484 ("A court may not grant this kind of injunctive relief without satisfying [the likelihood of success and irreparable harm] requirements, regardless of what the equities seem to require.").

For the reasons set forth above, the Court denies Plaintiff's motion for a preliminary injunction, including the relief of reinstatement requested. (Dkt. No. 2).

An appropriate Order accompanies this Memorandum Opinion.

March 31, 2012                                                              _____/s/_____
                                                                            WILMA A. LEWIS
                                                                            District Judge